IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AMERICAN NATIONAL PROPERTY AND )
CASUALTY COMPANY, )
 )
    Plaintiff, )
 )
v. ) Case No. 3:08-cv-00604
 ) Judge Trauger
CAMPBELL INSURANCE, INC., *et al.*, )
 )
    Defendants. )

## MEMORANDUM AND ORDER

Pending before the court is the Motion for Reconsideration filed by plaintiff American National Property and Casualty Co. (Docket No. 494), to which the defendants Campbell Insurance, Inc., A 2 Z Insurance, Inc., Tommy L. Campbell, and Marsha Colleen Campbell (collectively, the "Campbell Defendants") have filed a response (Docket No. 511). The motion seeks reconsideration of the court's Order dated June 27, 2011 (Docket No. 485), which ruled on the parties' motions for summary judgment. For the reasons discussed below, the plaintiff's Motion for Reconsideration will be denied.

## BACKGROUND

Defendant Campbell Insurance, Inc. ("Campbell Insurance"), which was owned and operated by defendants Tommy Campbell and Marsha Colleen Campbell ("Colleen Campbell"), was formerly an exclusive agent for the plaintiff, American National Property and Casualty Company ("American National"). The parties' relationship was governed by an agent agreement dated January 24, 2005 (the "2005 Agreement"). The plaintiff alleges that the Campbells formed

1

defendant A 2 Z Insurance, Inc. ("A 2 Z") so that they could compete against American National, in violation of the 2005 Agreement.

On April 1, 2011, all of the parties to this suit filed summary judgment motions; on June 27, 2011, the court denied the plaintiff's Motion for Summary Judgment and granted in part and denied in part the Campbell Defendants' Motion for Summary Judgment. (Docket No. 485.) In relevant part, the court: (1) held that, under the "offsetting benefits" doctrine, Tommy Campbell may argue at trial that any damages against him should be offset by the amount of post-termination compensation that he would have collected, absent his contractual breach; (2) held that a clause in the 2005 Agreement calling for Campbell Insurance to reimburse the plaintiff's "premium losses" was not an enforceable liquidated damages clause; (3) did not declare that the Campbell Defendants were liable, under the 2005 Agreement, for the plaintiff's attorney's fees; and (4) dismissed the breach of contract claim against Colleen Campbell. (*See* Docket No. 484.) The plaintiff has filed a Motion for Reconsideration challenging these four aspects of the court's ruling.

## ANALYSIS

**I.     Motion for Reconsideration Standard**

Although the Federal Rules of Civil Procedure do not explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). District courts

2

have "significant discretion" in deciding motions for reconsideration, and, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* Thus, a party may not "simply . . . reargue its prior position in the hope that the court will change its mind." *Al-Sadoon v. FISI\*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

## II.     Offsetting Benefits and Liquidated Damages

As to the issues of offsetting benefits and liquidated damages, the plaintiff clearly believes that the court's June 27, 2011 ruling was in error. (*See* Docket No. 495 at 5-24.) But the plaintiff has not introduced any new evidence or cited any controlling law overlooked by the court; instead, the plaintiff has essentially reiterated its previous arguments.[1] The court has already considered and rejected these arguments. (*See* Docket No. 484 at 39-45, 47-52.) Accordingly, the court will deny the Motion for Reconsideration as to these issues.

## III.    Attorney's Fees

Next, the plaintiff argues that the court should have found that the Campbell Defendants are liable to reimburse the plaintiff for its reasonable attorney's fees. (Docket No. 495 at 24-29.)

The 2005 Agreement contained a section titled "Policy Rollover." That section

---

[1] In support of its argument regarding offsetting benefits, the plaintiff cites *Missouri National Life Insurance Co. v. Executive Agencies, Inc.*, 514 S.W.2d 182 (Mo. Ct. App. 1974). That case, however, does not speak to the offsetting benefits doctrine, and it is not inconsistent with this court's decision.
   Furthermore, contrary to the plaintiff's representation (*see* Docket No. 495 at 13), it was not an "undisputed fact" that the supposed liquidated damages clause fixed a damages period ending at the end of the non-compete period.

prohibited the "Agent," which was defined as Campbell Insurance, from "solicit[ing] or accept[ing] any property or casualty insurance from any policyholder of [American National] whose business [Campbell Insurance] wrote, solicited, serviced, or sold while a representative of [American National]" for a period of one year after the termination of the agreement. (Docket No. 279, Ex. 6 at 7.) That section further provided:

> E. INJURY
>
> 1. Both parties agree that irreparable and incalculable injury may be done to the Company by violation of this Agreement. Therefore, in the event of breach of this policy rollover provision by the Agent, it is agreed that the Company may compel compliance by injunction or other remedy, including but not limited to money damages.
>
> 2. *Agent shall be obligated to reimburse the Company for premium losses and for reasonable legal costs, fees, and expenses incurred by the Company in enforcing this Agreement.*

(*Id.* (emphasis added).)

Under Missouri law,[2] when interpreting a contract, a court "[does] not look at provisions in isolation, [it looks] at the whole document." *Woodson v. City of Independence*, 124 S.W.3d 20, 27 (Mo. Ct. App. 2004); *see also Kellar v. American Family Mut. Ins. Co.*, 987 S.W.2d 452, 456 (Mo. Ct. App. 1999) ("Words or phrases in an insurance contract must be interpreted by the court in the context of the policy as a whole, and are not to be considered in isolation."). Thus, the court must read the 2005 Agreement's attorney's fees clause in light of the immediately

---

[2] The 2005 Agreement provided that it "shall be controlled by and construed under the laws of the State of Missouri." (Docket No. 279, Ex. 6 at 5.)

preceding subsection, which, by its terms, is limited to procedures "in the event of breach of this policy rollover provision by the Agent."

Reading this section of the contract as a whole, the court finds that, to recover attorney's fees, the plaintiff must first prove that Campbell Insurance breached the policy rollover provision. Accordingly, the defendants' liability for the plaintiff's attorney's fees will be determined at trial,[3] and the Motion for Reconsideration will be denied as to this issue.

## IV. Breach of Contract Claim Against Colleen Campbell

Finally, the plaintiff argues that the court erred in dismissing the breach of contract claim against Colleen Campbell. (Docket No. 495 at 29-33.)

The breach of contract claim against Colleen Campbell is based on actions that she took after November 1, 2007. In its June 27, 2011 decision, the court stated that, after November 1, 2007, "Colleen Campbell owned no shares of Campbell Insurance." (Docket No. 484 at 38.) As the court explained in its Memorandum, the relevant prohibitions contained in the 2005 Agreement applied only to current stockholders of Campbell Insurance. The court dismissed the claim because, after Colleen Campbell disposed of her shares, the 2005 Agreement "no longer limited her conduct." (*Id.*)

The plaintiff argues that the court's factual finding regarding the date of divestment was incorrect and that Colleen Campbell did not actually divest her ownership interest until

---

[3] In the June 27, 2011 Memorandum, the court stated that "it *appears* that Campbell Insurance violated the [policy rollover provision]." (Docket No. 484 at 35 (emphasis added); *see also id.* (stating that Campbell Insurance's actions "likely" violated that provision).) The court did not, however, hold that Campbell Insurance undisputedly violated that provision. Whether Campbell Insurance breached the policy rollover provision is an issue that remains for trial.

5

December 31, 2007. In support, the plaintiff relies exclusively on a document dated December 31, 2007, which states:

> Annual board meeting of Campbell Insurance, Inc was held on 12-31-07. Colleen Campbell, president, resigned her position with the corporation and transferred all stock to Tommy L. Campbell effective 11-01-2007. He is president and the only stockholder in this corporation.

(Docket No. 74, Ex. 2 at 3.) The document was signed by Colleen Campbell and Tommy Campbell. The plaintiff characterizes this document as evidence that the defendants "back-dat[ed] . . . a purported stock sale." (Docket No. 495 at 30.)

But the document does not clearly state that the sale was backdated; rather, it seems to state that the transfer was accomplished on November 1, 2007. Moreover, all of the other evidence relevant to this issue indicates that Colleen Campbell did, in fact, transfer her entire interest in Campbell Insurance to Tommy Campbell on or before November 1, 2007. First, a document titled "Agreement for Purchase" states:

> This agreement is between Tommy L. Campbell, Campbell Insurance, Inc., and Marsha Colleen Campbell dated October 31, 2007 regarding the purchase of Marsha Colleen Campbell's interest in Campbell Insurance, Inc.
>
> Until modification of this agreement at some future date, Marsha Colleen Campbell shall receive the sum of $15,000 (fifteen thousand dollars) per month. This agreement can be modified as necessary and at any time in the future deemed necessary.

(Docket No. 509, Ex. 3.)[4] That document was signed by the Campbells and a witness, and all of

---

[4] This document is attached to the declaration of Colleen Campbell that the defendants submitted in support of their response to the Motion for Reconsideration. This is not a new document, however; Tommy Campbell explicitly referred to it in deposition testimony quoted by

6

the signatures are dated October 31, 2007. Second, a document titled "Stock Transfer Ledger" indicates that Colleen Campbell transferred 500 shares to Tommy Campbell on November 1, 2007. (Docket No. 74, Ex. 2 at 2.) Third, at his deposition, Tommy Campbell testified that "[i]t was [the defendants'] understanding that all [of Colleen Campbell's] stock was transferred" on November 1, 2007.[5] (Docket No. 495 at 32 n.16.)

The plaintiff has presented no countervailing evidence showing that Colleen Campbell owned any shares of Campbell Insurance after November 1, 2007.[6] Accordingly, the plaintiff

---

the plaintiff. (Docket No. 495 at 32 n.16.)

[5] The defendants have also submitted declarations from Tommy Campbell and Colleen Campbell stating that Colleen Campbell intended to "relinquish any ownership in Campbell Insurance, Inc. on October 31, 2007." (Docket No. 508 ¶ 8; Docket No. 509 ¶ 8.)

The declarations further state that there is no documentary evidence indicating that Campbell Insurance ever actually issued any stock to Colleen Campbell. (Docket No. 508 ¶¶ 5-6; Docket No. 509 ¶¶ 5-6.) The plaintiff has filed a Motion to Strike the declarations, arguing that they contradict the defendants' earlier admissions that Colleen Campbell was a stockholder. (Docket No. 515 at 1-3.) But the declarations do not state that the defendants never believed that Colleen Campbell was a stockholder or that she did not, in fact, own stock. Instead, the declarations merely state that there is no record of any stock issuance. Because this does not conflict with the defendants' previous testimony, the court will deny the plaintiff's Motion to Strike.

[6] There is some confusion as to the number of shares of Campbell Insurance that Colleen Campbell owned before November 1, 2007. Certainly, before that date, the defendants believed that Colleen Campbell owned shares of Campbell Insurance; for example, the 2005 Agreement lists her as a "named stockholder." (Docket No. 279, Ex. 6 at 1.)

It is possible, however, that Campbell Insurance never actually issued stock to Colleen Campbell. The corporation's charter, dated July 11, 2000, authorized the issuance of 1,000 shares and stated that "[t]he initial offering of common shares shall be two hundred (200) total common shares – one hundred (100) to Tommy L. Campbell and one hundred (100) to M. Colleen Campbell." (Docket No. 74, Ex. 2 at 6.) But a stock certificate dated three days later issued 1,000 shares to Tommy Campbell. (*Id.* at 1.) It appears that no certificate was issued to Colleen Campbell, and there is no record that Tommy Campbell ever transferred any of his shares. (*See* Docket No. 508 ¶¶ 5-6; Docket No. 509 ¶¶ 5-6.)

Regardless, this evidence only creates an issue of fact as to the number of shares owned

7

has not raised a genuine issue of material fact regarding when Colleen Campbell divested her ownership, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 252 (1986) (holding that, to create a genuine issue of fact, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" and that proof must be more than "merely colorable"), and the Motion for Reconsideration will be denied as to this issue.

## CONCLUSION

For all of the reasons discussed above, the Motion for Reconsideration filed by the plaintiff (Docket No. 494) is **DENIED**, and the Motion to Strike filed by the plaintiff (Docket No. 514) is **DENIED**.

It is so Ordered.

Entered this 26th day of July 2011.

_____
ALETA A. TRAUGER
United States District Judge

---

by Colleen Campbell before November 1, 2007. It does not controvert the fact that Colleen Campbell transferred any interest she held in Campbell Insurance to Tommy Campbell on or before November 1, 2007.